**EMMONS COAL MINING CORPORATION et al. v. SIR R. ROPNER & CO., Limited.**

Circuit Court of Appeals, Third Circuit. February 20, 1929.

Rehearing Denied April 30, 1929.

No. 3810.

Acker, Manning & Brown, of Philadelphia, Pa. (J. Thurston Manning, Jr., of Philadelphia, Pa., of counsel), for appellants.

Biddle, Paul, Dawson & Yocum, of Philadelphia, Pa., and Burlingham, Veeder, Masten & Fearey, of New York City (Roscoe H. Hupper and William J. Dean, both of New York City, of counsel), for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMSON, District Judge.

BUFFINGTON, Circuit Judge. Under date of May 1, 1920, Sir R. Ropner & Co., Limited, hereafter called Ropner, owner of sundry vessels, made a charter party with the Emmons Coal Mining Corporation, hereafter called Emmons. Thereafter Ropner, as was its right, nominated and furnished, and Emmons accepted, the steamship Ingleby to carry a cargo of coal to be furnished by Emmons. Accordingly, the Ingleby duly reported ready to load at Charleston, S. C., at 11:30 a. m. on June 12, 1920, and was paid by Emmons full freight in advance to Rotterdam, Holland. By the charter, lay days began at 11:30 a. m. June 14th, and ended at 4 a. m. June 18th. As loading was not concluded until 9 a. m., June 26th, Emmons became liable, under the provisions of the charter, for $18,471.87 demurrage. Bills of lading were duly issued by the ship to Emmons. It sailed, claiming, but not exacting, payment, but the liability of Emmons was duly asserted by Ropner, and, as we hereafter hold, there was a contracted liability of Emmons to Ropner by the charter party for such demurrage, and the ship had a lien also upon the cargo therefor, which could have been enforced before delivery to Emmons or its assigns at Rotterdam, the port of destination. So much for the situation between Emmons and the ship.

As we have said, bills of lading were delivered to Emmons by the ship, without prejudice to the charter party; but, as Emmons objected to notation thereon of such demurrage claim, Ropner gave notice that the cargo, and Emmons as well, would be held liable therefor. Subsequent thereto Emmons sold the cargo to the Vulcaan Company, c. i. f. Rotterdam, whereby the latter was entitled to receive the cargo free of all liens on arrival. Such was the situation of the Vulcaan Company and Emmons and the cargo.

On arrival at Rotterdam, Emmons, on notice that the ship was asserting its claim of lien on the cargo, and recognizing its possible liability for such demurrage and the ship's possible right to enforce its lien against the cargo, requested Ropner to permit the cargo to be discharged, that the ship's lien be not enforced, and agreed to furnish Ropner with a bond securing such demurrage, if held good. Such contemplated bond in the sum of $26,000, with Emmons as principal, the Fidelity & Deposit Company of Maryland as surety, and Ropner as obligee, was given. It is dated at Philadelphia July 24, and recited that Emmons had the Ingleby under charter, that Ropner made the loading demurrage charge, that discharge had been deferred by Ropner "pending the determination of the actual amount of the claim for demurrage," and that it had been "mutually agreed that, upon the filing of a bond, satisfactory to the obligee hereunder, that the cargo of the said steamship Ingleby shall be discharged without prejudice to the rights of the parties at interest"; and was conditioned that the obligee "shall pay unto the said Sir R. Ropner Company, Limited, the amount of demurrage which shall eventually be agreed upon either by agreement between the parties or by judicial determination."

On this bond suit was brought in the court below, jury waived by stipulation, the case tried by a judge, judgment for plaintiff entered, and appealed by the defendants. As section 773, regulating such procedure, provides, "The finding of the court upon the facts may be either general or special, shall have the same effect as the verdict of a jury," and section 875 states, "The rulings of the court in the progress of the trial of the cause, if excepted to at the time and duly presented by a bill of exceptions, may be reviewed upon a writ of error or upon appeal," it follows that this court can only consider on appeal errors excepted to during the trial. Although there were none, we have for present purposes, and by virtue of our rule No. 11, " ⁂ The court, at its option, however, may notice a plain error not assigned," treated the case as though the record contained exceptions, and have considered the questions involved, so far as we have jurisdiction to question a judgment entered by a trial judge.

In that regard it is contended that the bond was executed and delivered under a mutual mistake as to existing fact, which is that, when the bond was signed, to wit, July 24th, the Ingleby had already discharged the cargo, and if the obligors had known such fact they would not have signed it, and therefore it was without consideration. We find no merit in this contention. It ignores the sequence of connected prior events, of which the giving of the bond was the final step. On July 1, 1920, on delivery of bills of lading, Emmons was notified, after the loading demurrage claim was recited: "We have also requested that you secure said demurrage either by bank guaranty or bond. ⁂ Please note that the owners reserve all their rights either to hold the cargo or yourselves for the unpaid demurrage, and if it is not promptly paid by the cargo or consignee at Rotterdam the owners will undoubtedly proceed against you to collect the same." After this notice Emmons sold the

cargo, c. i. f. to the Vulcaan Company of Rotterdam, which latter, on arrival of the Ingleby, was confronted with its claim of loading demurrage and its refusal to deliver the cargo until such claim was paid. Thereupon Vulcaan, in order to obtain discharge and delivery, had a Rotterdam firm obligate itself to the ship to pay the demurrage claim "if this is proved to be justified," and in so doing stated: "We have at once cabled to New York with reference to the mentioned demurrage, and have asked for authorization to pay the amount." Accordingly, Vulcaan cabled its representatives in New York: "You must urge Emmons authorize us to pay amount, as otherwise cargo will stop discharging which will result in further demurrage and heavy cost for account of Emmons." After negotiations the bond in suit, "conditioned for the payment of such loading demurrage as may be found due on account of the present cargo," was signed on July 24th, and the same day forwarded to the ship's representatives in a letter stating: "We understand that Mr. Clark is causing a cable to be sent forthwith to the other side releasing this cargo, so that discharge may be immediately proceeded with."

 It is now contended that, when the bond was physically signed, the Ingleby had already discharged the cargo. In the nature of things this whole transaction could not, in its details, be carried out at once. If the ship had postponed discharge until the bond was signed, the whole object of the adjustment would have failed, and the cargo on shipboard, which Emmons had sold c. i. f. Rotterdam, would have remained undelivered, and the grounds would thus be laid for a further demurrage claim against Emmons. Equity considers as then done what was at the time agreed to be later done. The subsequent signing of the then agreed upon bond was a fulfillment nunc pro tunc of the prior agreement. In that regard the trial judge properly said: "She was in a position to withhold discharge until the demurrage was paid. This meant a fresh claim for demurrage at the port of discharge. The payment of this demurrage the consignee would refuse. The vessel was willing to accept a bond in lieu of the cargo. She did not exact payment, but merely assurance that whatever was due would be paid. This situation was presented to the shipper, who agreed to give the bond, and subsequently gave it. Under the facts, whether the time of actual signing was before or after the unloading of the cargo does not control the question of liability." 31 F.(2d) 948.

As to the right of the ship to a lien on the cargo for loading demurrage charges, the judge committed no error. Clause 4 of the charter so provides, and the charterer so agreed when the charter was signed, and before any question of such charges arose. What cancels and annuls this stipulation, and releases Emmons for the subsequent delay in loading? To give clause 9 that effect is to nullify demurrage clause 4, and violate the rule of construction that every part of an instrument must, if possible, be given due effect. On the contrary, the entire charter is given due effect when we hold that clause 4 made the cargo liable for loading demurrage, and clause 9 did not, and was not meant to, apply to loading demurrage. The Marpesia (C. C. A.) 292 F. 957.

As to the contention the written bond was by parol reduced from $26,000 to $23,000, we find, as did the court below, no sufficient evidence to warrant such reduction.

Finding no error in these and other regards, the judgment below is affirmed.

### Sur Petition for Rehearing.

PER CURIAM. After due consideration of the petition and reasons for a rehearing therein advanced, we are not led thereby to differ in any way from the conclusion heretofore reached. The petition for rehearing is denied.